(No. 27432.—

THE J. R. WATKINS COMPANY, Appellee, *vs.* ROLAND
SALYERS, Appellant.

*Opinion filed November 16, 1943.*

Dwight H. Doss, for appellant.

N. E. Hutson, for appellee.

Mr. Justice Gunn delivered the opinion of the court:

Plaintiff brought action in the county court of Piatt county for the unpaid portion of the sale price of goods delivered under a written contract between the plaintiff and the purchaser. The defendant was the guarantor of the payment on the part of the buyer under said contract. Defendant filed an answer setting up several defenses, which, upon motion of plaintiff, was stricken as insufficient in form and substance. Defendant elected to abide by his answer, and was thereupon defaulted and judgment entered in favor of plaintiff. The judgment of the county court was affirmed by the Appellate Court for the Third District, and a certificate of importance was allowed by the Appellate Court to this court.

The plaintiff is a foreign corporation licensed to do business in this State. February 15, 1939, it entered into a written contract with James D. Price, who is designated as purchaser. It agreed to sell and deliver to the purchaser f.o.b. cars Winona, Minnesota, such goods as purchaser may require for sale from that date until December 1, 1940. The goods were to be used by Price in his then place of business or elsewhere, provided the buyer gives notice in writing of such other location. The buyer agreed to pay for such goods, and also the transportation charges, and agreed to the time and manner of payment. The contract also provided if the purchaser failed to pay, as agreed, the plaintiff might limit the sales agreed to be made, or

suspend the same, or require cash to be paid with each order, until the purchaser's indebtedness was paid. There were other provisions of the contract including one authorizing the purchaser to return goods and apply them upon the unpaid purchase price, and a provision by which plaintiff agreed to repurchase goods, after the termination of the contract, in case they were in the same condition as when sold.

The defendant executed a guaranty in writing endorsed upon the same contract, in which he acknowledged the reading of the contract and assenting to its terms, and unconditionally promised and guaranteed to pay for the goods and articles, together with transportation charges, in the time, place and manner as provided in the contract, and waived any notice of acceptance of the agreement by the buyer, or notice of default or nonpayment, or of any notice required by statute to such purchaser. Goods were delivered under said contract to the buyer from the date thereof until August 25, 1939, and the last credit payment by buyer was made April 16, 1940.

In his second amended answer the defendant alleged four defenses: (1) that the contract shows upon its face that it was intended for an agency contract, and that the buyer could not legally sell any of the goods purchased without complying with the law regulating transient merchants, (Ill. Rev. Stat. 1939, chap. 121½, pars. 158-165,) by procuring a license, and that plaintiff was charged with notice of such law, and that buyer did not have such a license, and that if buyer sold any such goods he did so from a building or residence, and that the sale was made with the knowledge that the goods were to be handled by Price as a transient merchant; (2) that under the contract it is contemplated, understood and agreed that Price would peddle and sell and become a transient merchant, and that therefore the defendant is not liable; (3) that the same facts as to the purchaser

being a transient merchant, and the further facts that the goods were sold and delivered to Price at a different place than where he resided at the time of making the contract, and that he thereby sold to persons not financially responsible, because he was not acquainted with their financial standing, thereby damaged and relieved the defendant; (4) that the contract as to defendant was constructively fraudulent because defendant was deceived into believing that Price would sell the goods in the neighborhood of Monticello, but actually was permitted to sell them in another neighborhood some fifty miles away.

We have set forth the legal effect of the answer as contended by appellant, but as a matter of fact the answer is an admixture of argument, conclusions, evasions, construction of contract, qualified denials and affirmative matter. But in view of the case being certified for importance we have endeavored to sift out the defense appellant claims for each part of the amended answer.

The claim that the contract is one of agency rather than sale cannot be sustained. It complies with the statute, which provides that a contract to sell goods is one whereby the seller agrees to transfer the property in goods to the buyer for consideration. (Ill. Rev. Stat. 1939, chap. 121½, par. 1.) The fact the contract provides goods may be repurchased and the price applied on amounts due and owing does not make it an agency contract, because the statute also provides that price may be paid in personal property. (Sec. 9.) By the contract plaintiff agreed to sell and deliver certain goods, and by the same contract Price agreed to accept and pay for the goods in a certain manner. The property was to be delivered f.o.b. Winona, Minnesota, and the buyer agreed to pay the transportation charges. There is no provision anywhere in the contract by which the seller retained title to the goods, but the property passed to the buyer when placed on board the cars at the place of shipment, and he became

liable for the payment thereof. Even under defendant's contention that the contract should be construed as one of agency he is not thereby relieved, because he does not deny that Price received the goods and failed to pay for them, and by the guaranty he made an unqualified promise to pay any amount Price could be required to pay under the contract.

Appellant's next contention that it was the intention and the meaning of the contract to authorize the buyer to dispose of the purchased goods as a transient merchant is not supported by anything, except the bare statement in the answer that such was contemplated by the contract. Where parties have reduced their contract to writing it is presumed to embody the whole contract, and, if clear and unambiguous, must be interpreted in the light of the language used therein. (*Lines* v. *Willey*, 253 Ill. 440; *Decatur Lumber and Mfg. Co.* v. *Crail*, 350 Ill. 319.) The contract is clear and unambiguous, and provides for the sale upon the part of the plaintiff, and the purchase upon the part of Price, of goods to be used in his business for a period of almost two years. There is no language in the contract from which it could be inferred the plaintiff agreed with Price that he must peddle, or should become a transient merchant of the goods in question, or anything other than a straight-out contract to furnish goods.

Upon the point that defendant was injured by the buyer moving from his home in Monticello to another county, appellant fails to point out any provision in the contract justifying his objection. The agreement provided the goods were to be sold for the use of the purchaser in his present locality, or to any other locality which the buyer designates in writing; and further provides the seller may waive the description of the locality without notice to the purchaser or to the sureties. When defendant admits he had read and agreed to the terms of the contract, and

promised to pay according to the terms thereof, he is in no position to urge as a defense something to which he acquiesced.

The principal defense urged is that plaintiff sold the goods to Price knowing the latter was violating, or was going to violate, what is commonly called the Transient Merchants' Law of this State. (Ill. Rev. Stat. 1941, chap. 121½, pars. 158-165.) This act provides that the term "transient merchant" shall mean any person, firm or corporation engaged temporarily in retail or wholesale of goods, wares or merchandise in any place in this State, and who for the purpose of conducting such business occupies any lot, building, room or structure of any kind. There are certain exceptions involving producers, manufacturers or farmers, not involved in this case. A transient merchant must obtain a license or be subject to fine or imprisonment. (Par. 158.) It also provides that selling from such lot or building for a period of less than six months shall be *prima facie* evidence such seller is a transient merchant. (Par. 163.)

An examination of the answer fails to disclose anything other than the legal conclusion that Price was a transient merchant. There is no statement as to how long Price had been in business prior to the execution of the contract. If he had been in business more than six months presumptively he would not be subject to the act. There is nothing in the pleadings to show the sales took place upon a lot, or such premises as provided in the act, or, on the other hand, that Price disposed of the goods by peddling around the country. The Transient Merchants' Law does not purport to forbid or regulate peddling. More than that, the statement of account shows goods were delivered and accepted eight months after the execution of the contract, and payments were made upon the contract more than a year after its execution, so the presumption created by statute would be inapplicable. In our

opinion the pleadings failed to show either that Price was a transient merchant at the time the contract was executed, or at any time during the period in which goods were furnished him.

The defense raised by this part of the answer is that plaintiff, by the sale of goods to Price, participated in violating the law of Illinois by furnishing goods to the buyer, and thereby engaged in an illegal transaction, which would prevent recovery of the purchase price of the goods. Appellant relies upon *Douthart* v. *Congdon,* 197 Ill. 349. This is a case in which a real estate broker was denied recovery because he failed to have a license to act as a broker, required by city ordinance. It is at once apparent this case has no application here. The person not having the license, and who had directly violated the law, attempted to recover, and we held he could not. It would be parallel and applicable to this case if Price as a transient merchant attempted to recover the price of goods he had sold in violation of the law, but it has no application to a person who had nothing to do with the violation of the law.

The principle appellant invokes is based upon the theory parties may not aid others to violate the law, and is applicable in cases where to deliver the goods is a direct violation of the law. Where, however, the goods are ordinary articles of commerce and may be lawfully sold to any one, to charge the seller with participating with the purchaser in not complying with licensing or regulatory requirements it is not sufficient to show generally there is such a regulation or requirement, but specific facts must be produced showing the seller knew the buyer was violating the law, and that he took active steps to aid in such violation. A general charge that the seller was bound to take notice of the law, or had reasonable ground to believe such a law was going to be violated is not sufficient. The knowledge alleged must be in fact, and not based upon

inferences. (*Brunswick & Balke Co.* v. *Valleau*, 50 Iowa, 120.) The fact the seller may guess or surmise the purchaser may possibly not comply with the licensing requirement is not sufficient to show a knowledge amounting to a participation in an illegal act. These principles have been long established. (*Hoefeld* v. *Ozello*, 290 Ill. 147; *Finch* v. *Mansfield*, 97 Mass. 89; *Adams* v. *Coulliard*, 102 Mass. 167; *Graves* v. *Johnson*, 179 Mass. 53, and notes 'Am. St. Rep. vol. 32, p. 446.) After giving appellant the benefit of a reasonable construction of his pleadings there is no sufficient showing either that Price was violating the law, or that some of the goods used were delivered for the purpose of violating the law, or that the seller intended and actively participated in the sale for the purpose of violating the law.

On the contrary the facts disclose an ordinary purchase and sale contract for the delivery of goods made in another State. The pleadings do not disclose Price violated the law according to the terms of the statute, and the most that is shown is a conclusion the plaintiff was bound to know goods were delivered to a buyer who might be in a position to violate the Transient Merchants' Law of Illinois. This is wholly insufficient. Considering only the substance of the matters shown by the answer, and overlooking the many things that make it subject to special grounds of objections, we find nothing in it that stated a defense to the plaintiff's cause of action.

The point is made appellant attempted to appeal from the order of the county court striking his answer from the files, and since this is not a final order the appeal should have been dismissed. However, the record shows appellant gave notice of appeal not only from the ruling of the court in striking his answer, but also in entering judgment against him. If the answer was good, of course, judgment should not have been entered by default, and consequently the point was properly saved for review.

We have gone to considerable length into the facts and pleadings because the legal questions of importance are not disclosed by the certificate of the Appellate Court. In making his application for the certificate the appellant reargued and raised substantially the same points he assigned as error in the Appellate Court, and has assigned here, which required a review of all of the issues in the case. We think the statute contemplates that when a certificate of importance is allowed by the Appellate Court it purposes pointing out the particular matter or point involved which is deemed of sufficient importance to require a review by this court. After an examination of the entire record we are of the opinion the appellant failed to set out matters in any part of his answer sufficient to constitute a defense, and therefore the Appellate Court, was correct in affirming the judgment of the county court.

The judgment of the Appellate Court for the Third District is affirmed.

*Judgment affirmed.*